The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit Be seated Our next case is 24-4468 United States v. Brewer Ms. Torrey Good morning, Your Honors. May it please the Court. Lauren Torrey on behalf of Appellant Christon Brewer. The District Court in this case erred as a matter of law when it applied the Abuse of Trust Adjustment under United States Sentencing Guidelines Section 3B1.3. We're asking this Court to reverse remand for resentencing without the guideline adjustment. Now, because the Court does not need to reach the Kaiser issue if it finds that there was no abuse of a position of trust, I'll focus my argument on the legal question of whether Mr. Brewer occupied a position of trust, unless directed otherwise, of course. When analyzing the question of whether an individual occupies a position of trust, this Court must determine if there is a fiduciary rule or something akin to a fiduciary rule. How it does that in this circuit is it looks to three factors. And those factors come directly from Behringer and Brack. The factors are, one, whether there are special duties or special access to information not available to other employees. Two, whether the defendant had broad discretion, and in this case over the funds. And three, whether the defendant is more culpable than others in similar positions. So can I stop you there? Because when I look at our cases, this is not your fault, but it seems like we have two different tests that are applied. One is the relationship test, and at least goes back as far as Kaplinger in 2003. And then we do have this separate three-factor test, which sometimes we call a four-factor test, that is in Behringer but also shows up in A. Cote and some other places. Do you have a view on the right way of doing this? We've sort of suggested sometimes you look at these and sometimes you look at those. They're just different tests. Maybe you can harmonize them in some way. Do you have views on what we're doing? When you seem to pick one of what seems like three different lines of cases to give us the test, why that one and what do you have views on this? Or you can say I have no idea what you're talking about and just move on. Either of those are options. I understand your honor's sentiment. I, too, share that there is this sort of disharmony among cases. I perceive this three-part test to be most useful when the nature of the position is in doubt. How I look at the cases when I look at, in this circuit and other circuits, there seem to be these two sort of paths the court can take, and I think your honor described it as the relationship itself. And in some cases we see the court, it's a clearer, more obvious answer when there is a fiduciary role established by some sort of legal relationship. So there are state laws that regulate the role itself. And then there are other cases where I would say it's more a position of doubt when we're dealing with, in this case in particular, financial advising, and it's not a licensed position, where I would suggest that the most useful case law are these three factors. The challenge with these three factors is they don't really seem to be relevant to a solo actor. They're all about members of an entity. How do they, what access to information do they have not available to other employees? Well, that factor obviously can't be applied to a solo person. The question of are they more culpable to others in similar positions, that's within the same entity. So I guess I have a hard time even understanding what this test means in the context like a client like you have. And so I sort of thought maybe these three factors apply when we're talking about someone within an entity and the relationship test applies when we're talking about really just like fundamentally the relationship. Maybe can you tell me how it would be useful to ask what information your client had that was not available to other employees? Who are the other employees that we should look at? And so, Your Honor, as a part of that, the first factor, the court also mentioned special duties. And so while the court could look at that from the perspective of in a role in a business or a company, the court can also look to it as whether there are special duties for an individual. But compared to other employees, right? Special duties that other employees don't have. But we don't have any other employees. I don't even, I just, it literally seems like it's a null set. It's like do you have more than an apple? I don't even know what that means, right? Like, I don't understand that. Understood, Your Honor. So I would point the court to cases that involve solo actors like the bail bondsman. An individual who is working on their own or a certified public accountant that might not work for one company but services multiple companies. What the court is looking at as to those special duties is whether there is this fiduciary responsibility to the individuals that they're servicing or their clientele. And so in this case, and I do understand the court's issue with how this applies to a person like Mr. Brewer and I agree that it doesn't. Here we have an individual who is not acting in a highly regulated role such as a lawyer, a bank executive, a doctor, a psychologist, a certified public accountant. We're dealing with an individual that had friendships with the investors in this case, took money from those individuals, purchased particular stocks, and then failed to provide payment in return. And here what's most interesting is that even if we're looking at just the relationship, Your Honor, there was no evidence in this case that Mr. Brewer was paid to act as what I would consider something different and apart from this case which would be sort of an investment broker, someone who is licensed, never claimed to be part of a company or a business or that he had his own firm as a solo licensed practitioner. This is someone that does not fit within this framework because this guideline shouldn't apply to him. And so when we look at defining the fiduciary role, even if we are just considering this to be just a relationship, I'd point the court to United States v. Kaplinger where it states that in every fraud case, the defendant will have gained the confidence and trust of the victim. Trust is insufficient. A position of trust is a term of art. And so this court needs to determine if there is a fiduciary relationship or something akin to a fiduciary relationship or that of a trustee between Mr. Brewer and these investors, of which there isn't. Additionally, when we look at discretion. Why isn't it the case that anytime someone is entrusted with someone else's money, that that sort of is akin to a fiduciary relationship? He did hold himself out as a pseudo-financial advisor. You say he had limitations with respect to the stock purchases, but those were only descriptive, I think, of what he said he would do on behalf of the clients. I don't think the clients limited him in that way. I think he was fairly free to do what he thought was best for the clients, or at least the clients thought that that's what he was going to be doing. So why isn't it as simple as that? Anytime you take somebody's money with the representation that you're going to invest the money on their behalf, you're acting in a pseudo-fiduciary role, and that's an abuse of trust. I disagree, Your Honor. I'm not surprised. The distinction here. And your client said that to the court. He said, I quote, took people's trust and, quote, let them down, unquote. Yes, Your Honor. But when we look at precedent, trust is not enough. There needs to be something else. And I would point the court to the cases that are cited in the briefing that deal with financial advising or brokers, investment advisors, people that claim to have those positions. And in all of those cases, what is similar is that the court is looking at this discretionary piece. When we look at United States v. Queen, it says that an investment advisor broker is typically an individual who is entrusted with the discretionary authority to manage assets of his or her clients. Do you think these clients limited your client's discretion with respect to how their money was handled? I think that it is the government's burden to show that there was broad discretion. It is not our burden to show that the discretion was in any way limited. And when we look at what the government provided in this case, they have a preponderance of the evidence to prove that this guideline should apply to Mr. Brewer. They failed to provide any evidence of discretion here, based on what was provided at sentencing or in its sentencing memorandum. And here, Your Honors, while the court- Can I ask what might just be a restatement of the Chief's good question? Do you think an agent, like any time a principal has an agent, that that agent is in a position of private trust, right? They're granted some authority, right? They're required to take actions consistent with the principal's interests, right? Like that's the type of interest we've got. Do you think an agent of a principal occupies a position of trust? I think it depends- Private trust, to be precise, I guess. I think it depends, Your Honor. That agent would need, well, at least what the courts have pointed to in case law, are sort of this indicia of, and this language isn't in the court's case law, but this indicia of reliability, right? We have individuals who have claimed to have licenses, individuals who have been given broad discretion by the victims to manage a large, for example- No, but I give my law clerk some money, and I tell him to go pay my water bill. I don't do that, obviously, Chief, to be very clear. It's purely hypothetical. We'll investigate. Right, and he, you know, in doing that, and he passes a store and decides to go make bad choices, like he's violated my trust, right? I gave him the $100. He was supposed to take that money down to the water bill place, wherever you go to pay your water bill. And he's supposed to provide it to them. I've trusted him to do that. In any sense, he is my agent, going to pay with money I gave him. He occupies a position of trust to me, right? I gave him money to go do it. I guess I have a little hard time seeing why this is hard at all, because it seems to me almost every agent would occupy a position of private trust. I'm giving them money, and here they gave your guy a ton of money, and in doing so, they trusted that he was not a crook. No, Your Honor, I disagree with that any agent would establish a position of trust, and this is because the colloquial term of trust is not what we're applying here. We're trying to determine if there is some sort of fiduciary role or something akin to a fiduciary role, and when providing money to a friend I think he's got a quasi-fiduciary responsibility to take the money and actually provide it to the water bill place. And so he can just go buy a bunch of Snickers bars and gorge himself. That's totally fine. That doesn't violate any kind of obligation he owes to me. No, Your Honor, because not in this sense, because the court has said that it's looking at or it's trying to differentiate between a typical commercial contractual relationship and that of a trustee. So I point the court to contracts. Contracts can exist where an individual is just a commercial relationship and those where the role of a sort of trustee has been established. Those are different things that can both exist. And so in this, in Your Honor's case— An arm's length contract is different than an agent. Totally agree, right? So I take your point, and if we had an arm's length contract, that'd be one thing, but what I'm describing is an agent, and that is not an arm's length contract, right? It is an agency relationship, which implies a quasi-fiduciary responsibility. But there was no agency relationship in this case. Providing funds to an individual doesn't create something that is beyond, at least in this case, the ordinary social relationship, which there needs to be something more. And again, anything that goes to whether the victims had confidence in the outcome to what Your Honor was saying was, I expect that individual to pay the water bill. But I point this court to the First Circuit in United States v. Syker where it says testimony by individuals that they trusted someone who betrayed their trust does not itself establish that the position was a position of trust. And so there needs to be something more than this violation of what we understand to be trust because that applies in every fraud case. What was the context of that First Circuit case? What was alleged that happened there? There in Syker, the individual was. I'm sorry, Your Honor, I'm not finding it in my note. Well, I mean, you've got some time for rebuttal. You can come back and respond to that. Of course, Your Honor. But what I would like to note is that this is not what we would consider the traditional financial advisor in this case because he was not given discretion over the funds. He was not permitted like a typical. He misrepresented himself as an experienced financial advisor, as a successful trader and a successful businessman. Yes, Your Honor. He did misrepresent what his true. Well, if he had said that he was a licensed investment broker, that would have been a misrepresentation. But if this court is going to. A day trader, a stock market investor, a financial advisor. Yes, Your Honor. But if the court finds that there is this fiduciary role, then it must then determine whether imposters count under the guideline, of which we argue it does not, based on Kaiser. And so if the court would like me to turn to that argument now, I can with my very limited time. But in short, the guideline. It was at the sentencing that he told the judge he took people's trust. Yes, Your Honor. He told Judge Cogman that. At the sentencing. That is the only finding by the district court here, is that the victims trusted Mr. Brewer. But trust is insufficient. There needs to be something more for the guideline to be applied. Because when we look to the special duties, the discretion that he had over the funds, and whether he is more culpable than others in similar positions of frauds that are like these, when we look at the case law, the government hasn't met its burden to show that these factors apply in their favor. Further, the guideline here is unambiguous. And under Kaiser, the court can't defer to note three. So imposters do not count. All right. You've got some time for rebuttal to speak a little bit more about that. Thank you, Your Honor. Ms. Wood. Good morning, and may it please the court. Julia Wood on behalf of the United States. The district court did not err when it applied the abuse of trust enhancement to Kriston Brewer. It didn't err as a matter of law when it found that imposters can qualify for the enhancement. And it did not clearly err when it found that under the particular facts of Mr. Brewer's case, the enhancement applied. I'll turn first to this issue of whether he held in a position of trust. I don't understand there to be any real dispute that a legitimate investment broker, trader, or advisor holds a position of trust. The court very clearly said that in Queen, and this court has cited Queen with approval in many cases, in Bolin, for instance, which is directly on point here. So I don't understand there to be any question that if he had actually been a legitimate broker and he took these people's money and he stole it, that he would have abused a position of trust. And our position is that since he did represent himself as a broker, a trader, an investment advisor, that he did abuse these victims, that he did abuse a position of trust, even though he wasn't a legitimate broker. I'll turn to the legal question. The district court did not err when it determined that the abuse of trust enhancement can apply. Do you have a view on the Chief's question, which is it is an abuse of private trust, if I paraphrase correctly, Chief, any time somebody gives you a large sum of money to do something with, whatever it might be, but certainly to invest, that that creates a position of private trust between the two people? When someone gives, yes, when someone gives a person money to invest, gives them discretion to invest it, yes, I do believe that that would constitute an abuse. And so in that sense, it sort of doesn't matter what he represented himself to be or otherwise, right? Sort of just like if he's convinced his friends or otherwise to give him a large sum of money to go buy things with, and he does not indeed go buy those things with it, then he has abused his position of trust. He has abused his position of trust under those circumstances, yes. So that's different, I guess, I think it was the Sixth Circuit or Seventh Circuit, the country club fellow who persuades his buddies to hand over some funds, the court there said that without more, that wasn't enough, you would disagree with the holding in that case. I think there is a distinction in that in that case, you have someone who is purporting to be a businessman, or he is a businessman, and he's purporting to have an investment project. And he is saying, give me some money to invest in this project, this specific project. There's no discretion there. This is an arm's length commercial transaction. He gives someone a note and says, I'll pay you back 10 percent, and then he doesn't do that. That, I think, is a little bit different from this case. That's the Mullins case, and then in the Second Circuit, the Jolly case. And this court made that distinction in Caplinger, where, you know, on one hand, you have Bolin, where someone represents themselves to be a trader and takes money and uses their position as a purported trader to say that they will invest the money, and they have discretion in that case. On the other hand, you have Mullins, and you have Jolly in the Second Circuit, where someone, it's more of an arm's length commercial transaction where someone is just lying and saying, you know, I have this project. You should invest in it. It's a great deal. But then they take the money. It's a fine distinction, but I do think it is a distinction. So is Judge Richardson's example of the law clerk who takes the money and runs instead of paying the water bill, where does that fall on that continuum? I think that probably falls a bit closer to the Mullins side. It's fraud. It's certainly fraud. But it really depends on the facts of, you know, what the relationship is. That's all the difference would be. So when I say, Jim, here's money, go pay it, right, he goes down and he pays it. So in that instance, it's not an arm's length transaction, right? He is, like, serving as my agent. If, in contrast, I say, hey, Jim, come mow my lawn. Here's $100 for doing so. And he doesn't mow the lawn, well, that might be fraud, right? But it's an arm's length transaction, right? I paid him to do something. In the country club example, what we've said is give me a loan, right, so that I can build this business up. We write out a promissory note. I hand it back. I get the money. That's an arm's length transaction, just like paying Jim to cut the grass, right? I paid somebody for a loan. I've gotten a promissory note back, right? That's not a position of trust any more than I've got a position of trust with my Bank of America, right? Like, that's, to me, those are, like, the fundamental distinctions. Like, one is an arm's length transaction, and one, Jim is actually serving as my agent, right, to go carry out a given task. Yes, I think your honor has obviously very well articulated the distinction. And it does, there is an element of what is the relationship between the actors. In Mullins, these were just, you know, people he knew from the country club, but they weren't, you know, close friends, or there wasn't any agency relationship or any personal friendship. But in this case, Mr. Brewer did gain the trust of, you know, friends and friends of friends and used his position as, or his purported position as an investment advisor, a broker, to betray their trust. And I would point out. How much in this kind of situation do we just trust the district judge? I think you do, and that's why we believe the proper standard of review is clear error here, because the district court heard all the evidence at sentencing. It heard the testimony of the agent who investigated the case. It heard from at least two victims. It had the government's sentencing memo. It had evidence that he held himself out as a broker, a trader. He was a day trader. He said he had access to margin, an account that other people didn't have. He said he only took clients with a minimum of $25,000 to invest. That's a JA 189. He, you know, and after, I do want to stress what the court said. After hearing all this evidence, Judge Cogburn said they put their trust in him as a reported broker, a day trader. So he found that, you know, specifically found that Mr. Brewer had represented himself to be a broker and a trader. And it doesn't matter that he didn't say I'm a licensed broker with Vanguard or something to that effect. He purposefully created the impression that he was a broker, a trader, somebody that these people could trust. And they trusted him, and he betrayed that trust. So we do believe that the district court did not clearly err. It's well supported by the evidence at the sentencing hearing. And, you know, this court should affirm because it's plausible in light of the record. Can I ask about this issue of discretion? I thought I heard your colleague on the other side. She said two things. One, it's the government's burden to show that Mr. Brewer had discretion. And second, that there was no such evidence in the record. What's your view of that? So we pointed to the lack of evidence in the record that they limited his discretion in any way. And that's because we're on review here. So we're looking at the entire record to see if the district court's finding was plausible in light of the record. Mr. Brewer did cite to certain stocks. But there's nothing in the record that says any of his clients or his victims told him, invest $50 in Apple and $60 in Tesla, that they directed his investments in any way. There's no evidence of that. And there is evidence that, you know, the agent went through every single victim at the sentencing hearing and said she gave him money to invest in the stock market. He gave him money to invest in the stock market. The district court's finding was certainly the imprints that he made, that these victims gave Brewer discretion to invest as he saw fit, was certainly plausible in light of all of that evidence. But as I understand the government's position, even if that were true, that they had limited his discretion in that way, that given the principal-agent relationship, that even with that limitation, it still might be appropriate to apply the enhancement. Because this is a case where we're looking at someone who represented himself as a broker, which is a position of trust, yes, I do believe, even if they limited his discretion in some way, that it would still be appropriate. But we don't think that they actually did. Do you have anything else, Ms. Wood? If the court has no further questions, we will rest on our briefs and ask that you affirm. Thank you very much. Thank you. Thank you. Thank you. Addressing quickly, Syker, as was noted earlier, in that case we were looking at an individual who was the sole employee of a surgeon, and there was an issue with how the funds were being handled. She was, I believe, in a secretarial position. And there the court found that because she was given significant discretion over those funds, that the enhancement should apply. And what I'd like to address briefly, Your Honors, based on the government's argument, is that there was this discussion of even if it was minimal discretion, and that isn't the exact words the government used, but that that would be sufficient, that's a misrepresentation of the case law. When we look at United States v. Kaplinger, and I also believe United States v. Bolin, the court is looking for broad discretion. And the language within the guidelines in Note 1, it is also described as professional or managerial discretion that is, for example, substantial discretionary judgment that is ordinarily given considerable deference. And so while United States v. Brack says there doesn't need to be complete discretion, there still needs to be something more than minimal discretion. So even the only thing in this record that describes the sort of transactions that were expected by the investors is that he invested or he would invest the money in either a particular stock, including Apple, Tesla, Amazon, and Moderna, or a cannabis store. And so that's how limited this record is in terms of evidence of discretion. And even if we were to allow, which I argue it is not, but even if that is minimal discretion, that does not meet the requirements under this court's precedent. Additionally, I'd like to address the standard of review. The government argues that the standard of review is clear error in this case. We submit the court should apply de novo review because this is a legal question of what qualifies as an abuse of trust. Clear error is something the court should apply when there's a dispute of fact. Here there are no dispute of facts. The only fact that was found below is that Mr. Brewer, that investors believed him, but that's not determinative based on the analysis that's required under the factors that I've gone over with the court. Regardless, though, Your Honors, this court could address this case as it did in United States v. Berenger, and it doesn't need to reach the standard of review here because under either standard it's our position that we would prevail. Because the district court didn't meaningfully analyze whether Mr. Brewer was pretending to act in a fiduciary fashion, and it isn't plausible on this record for the court to conclude that this guideline should apply to him. Because, again, as Your Honor pointed out with the government, there is no evidence of the required discretion. And I'd point the court to all the cases involving an individual that was acting in the role of an investment broker, financial advisor. What is consistent between those cases is that the defendant there was given broad, substantial, significant discretion over the funds, of which we don't have here. Unless there's any further questions, Your Honors, we'd ask for the court to reverse and remand free sentencing. Thank you very much, Victoria. Thank you. I want to thank both counsel for their fine arguments this morning. We'll come down and greet you and move on to our final case.
judges: Albert Diaz, Robert B. King, Julius N. Richardson